IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNC BANK, N.A., a National Association, as successor in interest to National City Bank,<br><br>          Plaintiff,<br><br>     vs.<br><br>BELINDA L. SMITH, in personam;<br>JACOB WINDING, in personam;<br>B & B DREAMIN', Hull No. GMKD283C505<br>(the "Vessel"), its engines, machinery,<br>appurtenances, etc., in rem;<br><br>          Defendants.<br>_____/ | No. 2:10-cv-1916-JAM-EFB PS<br><br><br><br><br><br>ORDER AND<br>FINDINGS AND RECOMMENDATIONS |

This case is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1). On November 7, 2012, the undersigned heard plaintiff's motion for summary judgment. Dckt. No. 39. Attorney Sandra Tiveri appeared at the hearing on behalf of plaintiff; defendants Jacob Winding and Belinda Smith appeared pro se.[1] As stated on the record, and for the reasons stated on the record, the undersigned recommends that the motion be denied.

////

---

[1] Ms. Smith appeared telephonically.

1

## I. BACKGROUND/ PROCEDURAL HISTORY

On July 20, 2010, plaintiff filed a verified complaint in rem and in personam for foreclosure of a vessel owned by defendant owner Belinda Smith (defendant B & B DREAMIN', Hull No. RGMKD283C505). Dckt. No. 1. On September 10, 2010, the assigned district judge issued an order authorizing issuance of a warrant for arrest of the vessel, Dckt. No. 11, and on March 30, 2011, issued an order deeming the vessel arrested and appointing National Maritime Services as substitute custodian of the vessel, Dckt. No. 19.

On November 22, 2011, defendant Smith filed an answer to the complaint, Dckt. No. 31, and defendant Winding filed an answer and counterclaim, Dckt. No. 32. Then, on January 5, 2012, plaintiff filed an answer to Winding's counterclaim. Dckt. No. 35.

Plaintiff filed the present motion for summary judgment on July 31, 2012 and noticed it for hearing on September 5, 2012. Dckt. No. 39. However, both defendants requested a continuance of the hearing, stating that they had not received a copy of the motion from plaintiff. Dckt. Nos. 44, 47. Therefore, on August 29, 2012, the court issued an order granting the request for a continuance and continuing the hearing on plaintiff's motion for summary judgment to November 7, 2012. Dckt. No. 46. The court also provided warnings to defendants about how to oppose a summary judgment motion and ordered plaintiff's counsel to re-serve defendants with a copy of the summary judgment motion and to file a proof of such service. Dckt. Nos. 46, 49. Defendant Smith then filed an opposition to the motion on October 17, 2012, Dckt. No. 51, and defendant Winding filed an opposition on October 18, 2012, Dckt. No. 52.

## II. MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on plaintiff's complaint against Defendants, B & B DREAMIN', Hull No. RGMKD283C505, her engines, tackle, accessories, equipment, furnishings and appurtenances, In Rem (collectively "the Vessel"); Belinda Smith, In Personam; and Jacob Winding, In Personam. Plaintiff also moves for summary judgment on Winding's counterclaim against plaintiff. Dckt. No. 39.

A. <u>Plaintiff's Version of the Facts</u>

Plaintiff contends that this is a straight-forward collection case. According to plaintiff, defendant Smith materially breached the terms of a written Fixed Rate Promissory Note and Security Agreement- Multi-State Dealer (hereinafter the "Note") that Smith executed and delivered to National City Bank ("National City") on or about July 12, 2005 in the principal sum of $336,653.69 plus interest for the purchase of the Vessel. Separate Statement of Undisputed Facts ("SSUF") No. 1.[2] Plaintiff's interest in the Vessel was secured by a Preferred Ship Mortgage (hereinafter the "Mortgage") against the Vessel which was duly recorded at the National Vessel Documentation Center against the Vessel on August 15, 2005 as a Preferred Mortgage. SSUF 2, 3.

On July 11, 2005, Smith allegedly executed a second Promissory Note Secured By A Marine Vessel Called B&B Dreamin' (Straight Note-Interest Only) (hereinafter "Note 2") in the amount of $110,000.00 with defendant Winding. SSUF 4. A Preferred Ship Mortgage (hereinafter the "Winding Mortgage") securing Note 2 was allegedly recorded by Winding on or about May 29, 2009. SSUF 5.

In November 2009, plaintiff merged with National City as a result of which plaintiff assumed all of the deposits and loans of National City and thereby plaintiff became the holder and owner of what is now PNC Loan No. 6244x6130, including the Note and the Mortgage on the Vessel. SSUF 6, 7.

Smith defaulted under the Note and the Mortgage by failing to make the monthly payment due on August 10, 2008 and all payments accruing thereafter. SSUF 8. As a result, plaintiff elected to charge off this account in April 2009 and accelerate the entire balance due under the Note and the Mortgage. SSUF 9. There is now due and owing to plaintiff under the Note the principal sum of $288,648.57, and accrued interest through April 30, 2009 in the

---

[2] All references to the Separate Statement of Undisputed Facts incorporate by reference the exhibits and evidence cited to therein.

3

amount of $31,794.65, and thereafter at the rate of 6.75% per annum. SSUF 10. On or about May 29, 2009, plaintiff repossessed the Vessel for the purpose of re-marketing same in order to apply the net proceeds to the balance owing under the Promissory Note and Mortgage. SSUF 11.

### B. Smith's Version of the Facts

Smith opposes plaintiff's motion for summary judgment, arguing that summary judgment should be denied because there are genuine issues of material fact in dispute. Dckt. No. 51. Specifically, Smith contends that she closed out her debt with National City and that therefore there was no active contract between her and National City. She contends that after she closed out the account she gave up possession of the vessel to Winding because of his lien. She contends that plaintiff "is a secondary bank that is not the actual holder of all the discrepancies that went on with [her] account." *Id*. at 2.

Smith disputes nearly all the facts in plaintiff's statement of undisputed facts. Dckt. No. 51-1. She also submits an affidavit under penalty of perjury in which she contends that she originally purchased a 3860 Commodore Regal Boat on July 9, 2005 and that National City was to carry the note on the boat in the amount of $292,431.00. Dckt. No. 51-2, ¶¶ 3-5, Ex. A. However, instead of financing the boat, Smith paid the total sum owed on the boat. *Id.* ¶ 6. According to Smith, she returned the boat the next day on July 10, 2012 to get a larger boat called the Regal 4260 Commodore (the "Vessel"). *Id.* ¶ 7. Because the amount for the boat was greater than the amount Smith had already paid, Smith took a loan out with defendant Winding in the amount of $110,000.00 on July 11, 2012. *Id.* ¶ 9, Ex. B.

The contract with National City was rewritten to reflect the larger vessel. *Id.* ¶ 10. After crediting Smith for the money she paid for the smaller boat ($292,431.00), the balance owed/due on the Vessel was approximately $36,000 excluding finance charges. *Id.* ¶ 11. Smith contends that upon receiving a payment statement from National City months later, she saw that the amount owed was overstated and that she was erroneously not given credit for the $292,431.00

she had already paid. *Id.* ¶¶ 12, 13.  Smith contends that she called the dealer and National City concerning the payment statement and that National City agreed to make the adjustments after speaking to the dealer. *Id.* ¶¶ 14, 15.

Smith contends that she made payments every month for over a year, and that she paid National City close to $80,000 while they were attempting to correct the loan amount. *Id.* ¶ 16. When Smith called National City about the loan amount, she was told that the adjustments were being worked on. *Id.* ¶ 17.  She called in so regularly that National City would tell her that no payment was due on the account. *Id.* ¶ 18.  National City began issuing Smith monthly installment statements showing no amount was due on the account while they corrected/adjusted the loan amount in their system, and in January 2008, National City corrected the error in their system and the account was closed out. *Id.* ¶¶ 19, 20.  Smith specifically avers that she has paid in full the debt owed for the Vessel. *Id.* ¶ 21.

By March 2008, Smith turned over the vessel to Winding as he had an outstanding lien on the vessel in the amount of $110,000; thereafter, Winding paid docking fees, maintenance, insurance and all other fees required on the Vessel. *Id.* ¶ 22.  On March 17, 2009, Smith began to receive information concerning a past due amount for the Vessel from National City. *Id.* ¶ 23. Smith called to speak with National City as it had been approximately two years since she had last heard from them after correcting and closing out the loan. *Id.* ¶ 24.  National City reviewed the entire account and again closed the account without Smith having to send any additional money. *Id.* ¶ 25.

On or about June 1, 2009, Winding called Smith to tell her that the Vessel was missing along with all of his property and belongings. *Id.* ¶ 26.  Smith and Winding called the Stockton police to make a report and found out that the boat had been repossessed for nonpayment. *Id.* ¶ 27.  Smith has been attempting to regain possession of the Vessel ever since. *Id.* ¶ 31.

////

////

C.  Winding's Version of the Facts

Winding also opposes the motion for summary judgment, arguing that there are genuine issues of material fact in dispute. Dckt. No. 52. Winding contends that he executed a contract on July 11, 2002 for $110,000.00 which was secured by the Vessel and that thereafter he took possession of the Vessel. He contends that he was residing on the Vessel when it was repossessed by plaintiff "under a false pretense of having an open and outstanding debt of the Vessel." *Id.* at 2. Winding contends that plaintiff's removal of the vessel resulted in his personal possessions and cargo being spoiled, stole, damaged, and destroyed. *Id.* Winding also contends that there was no contract for plaintiff to collect upon. *Id.* at 4.

Winding also disputes nearly all the facts in plaintiff's statement of undisputed facts, Dckt. No. 52-2, and submits an affidavit under penalty of perjury attesting to facts very similar to those contained in Smith's affidavit, Dckt. No. 52-1. Specifically, Winding avers that he is the lien holder of the Vessel. Dckt. No. 52-1 ¶ 1, Ex. A. He contends that Smith borrowed $110,000 from him on July 11, 2012 to purchase a boat. *Id.* ¶ 2, Ex. B. He adds that the ship mortgage was an interest only note and that Smith made good on her payments. *Id.* ¶ 3.

Winding contends that in March 2008, Smith turned the Vessel over to him due to his lien on the Vessel, the fact that Smith was having to hire someone to drive the Vessel each time she wanted to take it out on the water, and the fact that the sale price for large boats had dropped significantly and, as such, the Vessel was only worth around the value of the lien. *Id.* ¶¶ 4-7.

Winding contends that he used the boat as his living quarters and residence, and that he placed insurance on the boat, paid for its docking fees, and regular maintenance. *Id.* ¶¶ 8-9. On May 29, 2009, when Winding came home to the Vessel, it was gone, along with Winding's personal possessions. *Id.* ¶ 10. He called Smith and they both discovered from the Stockton Police Department that the Vessel had been repossessed. *Id.* ¶ 11.

Winding adds that Smith has paid the debt balance plaintiff is referring to in this case and that he was in the office the day National City apologized for the mistake made to Smith's

account back in 2007.  *Id.* ¶ 24.  According to Winding, the only lien that should be standing on the Vessel is the ship mortgage between Smith and Winding.  *Id.* ¶ 25.  However, Winding contends that if the court finds otherwise, his ship mortgage was executed prior to plaintiff's and therefore holds a senior position to plaintiff's lien.  *Id.*

C. Requests for Admission

Plaintiff's motion for summary judgment is predicated in part, on its contention that the facts material to the motion have been or must be deemed admitted by defendants.

On or about February 14, 2012, plaintiff's counsel served Smith and Winding with Requests for Admission.  SSUF 17.  Plaintiff contends that because defendants failed to timely respond thereto, SSUF 18, the matters contained within the Requests for Admission should be deemed admitted under Federal Rules of Civil Procedure 36(a)(3).  Dckt. No. 39 at 7-11.

However, both Smith and Winding state under penalty of perjury that they did not receive the Requests for Admission.[3]  Dckt. No. 51 at 3, 4-5; Dckt. No. 52 at 4; Smith Decl. ¶¶ 41-43; Winding Decl. ¶ 21.  Although plaintiff argues that whether defendants received them is irrelevant since the were properly sent, Dckt. No. 53 at 3, as an initial matter, it does not appear that the discovery was even proper since the discovery requests were served before the parties held a Rule 26(f) discovery conference.  *See* Smith Decl. ¶ 46 (stating that no such conference was ever held); Fed. R. Civ. P. 26(d) (which provides that a party may not seek discovery until a Rule 26(f) conference has been held, except in proceedings that are exempt from the initial disclosure requirements or when authorized by the Federal Rules of Civil Procedure, stipulation, or court order).[4]

////

---

[3] Both Smith and Winding also reiterated that at the November 7, 2012 hearing.

[4] Also, at the November 7, 2012 hearing, plaintiff's counsel stated that she was unaware of a Rule 26(f) conference having been conducted.  Therefore, the court directed the parties to conduct such a conference.

7

Regardless, even if the Requests for Admission had been properly issued and served, defendants' statements in their oppositions regarding the Requests for Admission may be construed as motions for relief from those admissions pursuant to Rule 36(b), which provides that "a matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." A party may be permitted to withdraw or amend an admission if the court finds: (1) withdrawal will aid in presenting the merits of the case; and (2) no substantial prejudice to the party who requested the admission will result from allowing the admission to be withdrawn or amended. Fed. R. Civ. P. 36(b); *see Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007) (court must consider both factors in deciding motion to withdraw or amend). Here, assuming that the requests are deemed admitted, defendants should nonetheless be permitted to withdraw those admissions because withdrawal will aid in presenting the merits of the case and because plaintiff will not be substantially prejudiced by allowing the admissions to be withdrawn. Therefore, as stated at the hearing, plaintiff cannot rely on any deemed admissions for purpose of its summary judgment motion.[5]

D. <u>Analysis</u>

Apart from the request for admissions issue, plaintiff contends that it is entitled to summary judgment on its foreclosure claim based on the evidence submitted with the motion. Specifically, plaintiff seeks an order providing that (1) plaintiff has a first priority security interest in the Vessel; (2) defendant Smith is in default of her obligations to plaintiff; (3) plaintiff is entitled to possession of the Vessel; (4) plaintiff is entitled to a deficiency judgment against Smith pursuant to 46 U.S.C. § 31325(b)(2)(A); and (5) plaintiff is entitled to a judgment against Smith for attorney's fees and costs. Plaintiff also seeks summary judgment on defendant

---

[5] At the November 7, 2012 hearing, the court directed defendants to respond to the Requests for Admission within thirty days. It appears that defendants have now done so, as they lodged copies of their responses to the Requests for Admission, as well as copies of their responses to plaintiff's Interrogatories and Requests for Production of Documents, and proofs of service of those responses on plaintiff's counsel.

Winding's counterclaims for declaratory relief, conversion, and/or negligence. Specifically, plaintiff seeks an order providing that (1) defendant Winding's interest in the Vessel is subordinate to that of plaintiff; (2) plaintiff is not liable to Winding for conversion; (3) plaintiff is not liable to Winding for tort; and (4) plaintiff is not liable to Winding for attorney's fees or court costs.

A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel. 46 U.S.C. § 31325(a). On default of any term of a preferred ship mortgage, the mortgagee may enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented, a vessel titled in a state, or a foreign vessel. *Id.* § 31325(b)(1) ("On default of any term of the preferred mortgage, the mortgagee may– (1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel"); *see also Capital Bank PLC v. M/Y Birgitta*, 2010 WL 2902740 (C.D. Cal. 2010) (A borrower's failure to pay any of the monthly installments on a marine loan after the bank's arrest of the borrower's foreign vessel for insufficient insurance constituted a default and thus made the entire unpaid principal due and owing under the marine loan and marine mortgage.); *Bogle v. M/Y Cajun Princess*, 2010 WL 1949550 (S.D. Fla. 2010) (A lien holder was entitled to summary judgment where there were no fact issues as to whether the preferred mortgage lien was valid; the current outstanding mortgage indebtedness secured by the vessel for principal and interest was $7,110,525.80, and the vessel owner conceded they were in default for nonpayment.).

The mortgagee may also enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness and a civil action against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness. 46 U.S.C. § 31325(b)(2). Such an action may be brought following a

9

foreclosure sale which produces insufficient proceeds to satisfy an outstanding preferred mortgage. *Wilmington Trust Co. v. M/V Miss B. Haven V*, 760 F. Supp. 2d 364 (S.D.N.Y. 2010). The district courts have original jurisdiction of a civil action brought under § 31325(b)(1) or (2). *Id.* § 31325(c).

Here, although plaintiff has submitted significant evidence in support of its motion for summary judgment, given the factual disputes created by defendants' affidavits, which are signed under penalty of perjury, summary judgment must be denied.[6] Specifically, defendants' affidavits create genuine issues of material fact as to whether Smith owed National City anything at all – and therefore there are disputes as to whether plaintiff has or had any proper interest in the Vessel or any right to repossess the Vessel. The court cannot find that plaintiff is entitled to summary judgment given genuine issues of material fact as to: (1) whether plaintiff has a first priority security interest in the Vessel; (2) the amounts Smith actually paid on the account and whether she was properly credited for the vessel she allegedly returned the next day to exchange for the defendant Vessel, and whether Smith is, in fact, in default of her obligations to plaintiff; (3) whether plaintiff is entitled to possession of the Vessel; (4) whether plaintiff is entitled to a deficiency judgment against Smith under § 31325(b)(2)(A); (5) whether plaintiff is entitled to a judgment against Smith for attorney's fees and costs; (6) whether Winding's interest in the

---

[6] Plaintiff makes numerous evidentiary objections to defendants' affidavits. Specifically, plaintiff objects to paragraphs 9, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 25, 45, and 47 of Smith's affidavit, arguing that those paragraphs lack foundation, lack proper authentication, constitute inadmissible hearsay, are impermissibly self-serving, and violate the Best Evidence Rule. Dckt. No. 53-1. Plaintiff also objects to paragraphs 1, 2, 15, 19, 24, 25, 27, and 27 of Winding's affidavit on similar grounds. Dckt. No. 54-2. However, because plaintiff has provided insufficient support or explanation for those conclusory objections, they are overruled. First, defendants' affidavits are claimed to be based on their own percipient knowledge about facts that they personally experienced; therefore, the foundation and authentication objections lack merit. Additionally, to the extent plaintiff is objecting to Smith's references to statements from National City Bank employees regarding Smith's account/mortgage, those statements are non-hearsay statements by plaintiff's employees under Federal Rule of Evidence 801(d)(2). At the very least, the statements would fall under the statement against interest hearsay exception (Federal Rule of Evidence 804(b)(3)) since Smith presumably will be unable to procure testimony from National City employees given that the company is no longer in existence.

1  Vessel is subordinate to that of plaintiff; (7) whether plaintiff is liable to Winding for
2  conversion; (8) whether plaintiff is liable to Winding for other torts; and (9) whether plaintiff is
3  liable to Winding for attorney's fees or court costs.  Although plaintiff dismisses the statements
4  made in the defendants affidavits as  mere "allegations," they are factual assertions made in
5  written declarations verified under penalty of perjury and constitute evidence sufficient to
6  establish genuine issues of material fact that preclude summary judgment on each of the claims
7  at issue.  Whether a trier of fact will credit the individual defendants' version of the facts, or that
8  of plaintiff will be determined at trial.

9  III.    <u>CONCLUSION</u>

10         Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary
11  judgment, Dckt. No. 39, be denied.

12         IT IS FURTHER ORDERED that:

13         1. A status (pretrial scheduling) conference is set for March 6, 2013, at 10:00 a.m. in
14  Courtroom No. 8 before the undersigned.

15         2. Not later than fourteen (14) days prior to the status conference, the parties shall file
16  status reports[7] briefly describing the case and addressing the following:

17              a. Progress in service of process;
18              b. Possible joinder of additional parties;
19              c. Expected or desired amendment of pleadings;
20              d. Jurisdiction and venue;
21              e. Anticipated motions and their scheduling;
22              f. The report required by Federal Rule of Civil Procedure 26 outlining the
23  proposed discovery plan and its scheduling, including disclosure of expert witnesses;
24  ////
25
26         [7] The parties are encouraged, when possible, to file a joint status report.

g. Cut-off dates for discovery and law and motion, and dates for pretrial conference and trial;

h. Special procedures, if any;

I. Estimated trial time;

j. Modifications of standard pretrial procedures due to the simplicity or complexity of the proceedings;

k. Whether the case is related to any other cases, including bankruptcy;

l. Whether a settlement conference should be scheduled;

m. Whether counsel will stipulate to the magistrate judge assigned to this matter acting as settlement judge and waiving disqualification by virtue of his so acting, or whether they prefer to have a settlement conference conducted before another judge;

n. Any other matters that may add to the just and expeditious disposition of this matter.

DATED: January 14, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE