1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PNC BANK, N.A., a National Association,        No.  2:10-cv-1916-JAM-EFB PS
     as a successor in interest to National City
12   Bank,

13              Plaintiff,                           ORDER AND FINDINGS AND
                                                     RECOMMENDATIONS
14        v.

15   BELINDA L. SMITH, in personam;
     JACOB WINDING, in personam; B & B
16   Dreamin' Hull No. GMKD283C505 (the
     "Vessel"), its engines, machinery,
17   appurtenances, etc., in rem,

18              Defendants.

19

20        This matter was before the court on July 9, 2014, for hearing on defendant Smith's motion

21   for reconsideration of several non-dispositive orders (ECF No. 109); plaintiff's motion for

22   terminating sanctions, or in the alternative, for evidentiary and issue preclusion sanctions (ECF

23   No. 112); plaintiff's motion for summary judgment (ECF No. 113), and defendant Smith's

24   motion to strike certain filings by plaintiff (ECF No. 133).  Attorney William Sexton appeared on

25   behalf of plaintiff, defendants Smith and Winding appeared pro se.

26        Although not addressed at the hearing, also under submission are plaintiff's motion to

27   dismiss defendant's Smith first amended counterclaim (ECF No. 142) and defendant Winding's

28   motion to stay the proceedings (ECF No. 153).  For the reasons that follow, the court denies

                                                1

1  defendant Smith's motion for reconsideration and motion to strike, and denies defendant

2  Winding's motion to stay the proceedings.  Further, it is recommended that plaintiff's motions for

3  sanctions and for summary judgment be granted in part.  It is also recommended that plaintiff's

4  motion to dismiss Smith's second amended counterclaim be denied as moot.

5  I.      Procedural Background

6          The procedural history of this case is convoluted.  On July 20, 2010, plaintiff filed a

7  verified complaint in rem and in personam for foreclosure of a vessel owned by defendant owner

8  Belinda Smith (defendant B & B DREAMIN', Hull No. RGMKD283C505).  ECF No. 1.  An

9  order authorizing the in rem arrest of the vessel was issued on September 10, 2010.  ECF No. 11.

10  Subsequently, on March 30, 2011, an order was issued deeming the vessel arrested and

11  appointing National Maritime Services as substitute custodian of the vessel.  ECF No. 19.  Smith

12  filed an answer to the complaint, ECF No. 31, and defendant Winding filed an answer and

13  counterclaim.  ECF No. 32.  Plaintiff has filed an answer to Winding's counterclaim.  ECF No.

14  35.

15          Plaintiff moved for summary judgment, seeking a determination (1) that plaintiff has a

16  first priority security interest in the vessel; (2) that defendant Smith is in default of her obligations

17  to plaintiff; (3) that plaintiff is entitled to possession of the vessel; (4) that plaintiff is entitled to a

18  deficiency judgment against Smith pursuant to 46 U.S.C. § 31325(b)(2)(A); and (5) that plaintiff

19  is entitled to a judgment against Smith for attorney's fees and costs.  ECF No. 39.  Plaintiff also

20  sought summary judgment on defendant Winding's counterclaims for declaratory relief,

21  conversion, and/or negligence.  Specifically, plaintiff sought a determination (1) that defendant

22  Winding's interest in the vessel is subordinate to that of plaintiff; (2) that plaintiff is not liable to

23  Winding for conversion; (3) that plaintiff is not liable to Winding for tort; and (4) that plaintiff is

24  not liable to Winding for attorney's fees or court costs.  Because of factual disputes raised by

25  /////

26  /////

27  /////

28  /////

2

1  defendants' affidavits,[1] plaintiff's motion for summary judgment was denied on March 18, 2013.

2  ECF Nos. 56, 62.

3         Following the denial of summary judgment, plaintiff noticed the depositions of the

4  defendants to take their testimony as to the key issues of whether and how Smith actually paid in

5  full the $336,000 purchase price of the vessel, and whether and how Winding actually loaned

6  $110,000 to Smith.  ECF No. 92 at 4.  The depositions were noticed for February 6 (Smith) and

7  February 7 (Winding), 2014.  ECF No. 92 at 25 and 31.  The defendants failed to appear for their

8  depositions.  ECF No. 92.

9         In the interim, Smith filed a motion for leave to file an amended answer in order to assert

10  counterclaims against plaintiff.  ECF No. 65.  That motion was granted and Smith filed an

11  amended answer and counterclaim.  ECF No. 76, 77.  Plaintiff subsequently moved to dismiss

12  that counterclaim on July 22, 2013.  ECF No. 78.  While that motion was pending, plaintiff also

13  filed a motion for exclusionary sanctions seeking to preclude the defendants' testimony at trial

14  based on their failure to appear at their depositions.  ECF No. 92.  Alternatively, plaintiff

15  requested an order compelling defendants' attendance at their depositions.  *Id*.

16         Findings and Recommendations were issued on March 6, 2014, recommending that

17  plaintiff's motion to dismiss be granted and that Smith's counterclaim be dismissed in its entirety

18  with leave to amend.  ECF No. 94.  Further, an order was issued granting in part plaintiff's

19  motion for sanctions.  ECF No. 95.  That order also directed defendants to appear at their

20  depositions at a date to be set by plaintiff before April 4, 2014.  *Id.*

21  /////

---

22         [1] The defendants' factual allegations are described in detail in the recommendation to
23  deny an earlier motion for summary judgment.  *See* ECF No. 56 at 4-7.  In short, defendants
    claimed in opposition to that motion that Smith bought another boat, paid for it in full at the time
24  of purchase with a purchase price of $292,431, and then the next day returned that in exchange
    for a larger and more expensive one.  The difference in price was $36,000.  Smith and Winding
25  claim that Smith borrowed $110,000 from Winding, in part to cover the additional $36,000 for
    the larger boat.  That loan was allegedly secured by a security interest in the vessel in favor of
26  Winding.  According to the defendants, Smith defaulted on the Winding loan and gave up
    possession of the vessel to Winding in satisfaction of her debt to Winding.  Smith claimed that no
27  money is owed to plaintiff and that plaintiff's predecessor in interest failed to credit Smith with
28  the $292,431 she originally paid for the boat she returned in the exchange.  ECF Nos. 51-2; 52-2.

1      While the March 6 recommendation was pending, Winding filed in this action a

2  notification that he had filed a voluntary Chapter 13 bankruptcy petition on January 21, 2014.[2]

3  ECF No. 97.  In light of that notice and in the interest of judicial economy, this case was stayed

4  pending either resolution of Winding's bankruptcy petition or an order granting relief from the

5  automatic stay.  ECF No. 101.  However, on April 16, 2014, plaintiff filed a copy of an order by

6  the Bankruptcy Court confirming that the automatic bankruptcy stay did not apply to Winding.

7  The order explained that because Winding had filed three previous Chapter 13 petitions within

8  one year of his latest bankruptcy petition the automatic bankruptcy stay never applied to the

9  January 21, 2014 petition.  ECF No. 102 at 7.  Accordingly, on April 17, 2014, the stay entered

10  by this court was lifted.  ECF No. 103.

11      Because of the delay occasioned by Winding's filings, the scheduling order in this case

12  was modified to extend the discovery cutoff date to May 16, 2014 to allow plaintiff to take Smith

13  and Winding's depositions.  *Id*.  However, as addressed below, notwithstanding the court's order

14  and despite repeated efforts by plaintiff to complete those depositions, the defendants' failure to

15  cooperate has prevented those depositions from occurring.

16      On May 30, 2014, Smith filed the current motion for reconsideration, asking the court to

17  reconsider four non-dispositive orders and/or findings and recommendations.  ECF No. 109.[3]

18  Plaintiff subsequently filed a motion for sanctions and motion for summary judgment.  ECF Nos.

19  112, 113.  Defendants Smith and Winding filed oppositions to the motion for summary judgment.

20  ECF Nos. 125, 128.  Winding filed an opposition to plaintiff's motion for sanctions, and Smith

21  filed a declaration in support of Winding's opposition, which the court construes as an opposition

22  to plaintiff's motion.  ECF No. 132, 139.  Thereafter, Smith filed a motion to strike plaintiff's

23  /////

24  _____

25      [2] Winding did not explain why he waited until March 6, 2014 to inform this court of the bankruptcy filing.

26      [3] Although Smith failed to notice her motion for reconsideration for hearing, the court

27  scheduled the matter to be heard on the same date as plaintiff's motions for sanctions and summary judgment.  ECF No. 118.

28

4

1   motions for sanctions, the declarations submitted in support of PNC's motion for summary

2   judgment, and PNC's opposition to Smith's motion for reconsideration.  ECF No. 133.

3          Further complicating matters, Smith filed a first amended counterclaim on June 30, 2014,

4   erroneously titled second amended counterclaim,  ECF No. 134, which plaintiff has moved to

5   dismiss.  ECF No. 142.

6   II.     Smith's Motion for Reconsideration

7          Smith seeks reconsideration of (1) the March 6, 2014 order and findings and

8   recommendations denying Smith's motion to strike the affidavit of Brian Lutton and

9   recommending that plaintiff's motion to dismiss Smith's counterclaim be granted (ECF No. 94)[4];

10  (2) the March 7, 2014 order granting in part plaintiff's motion for sanctions, which ordered Smith

11  and Winding to appear for their depositions at a date set by plaintiff (ECF No. 95); (3) the March

12  31, 2014 order staying the case pending resolution of Winding's bankruptcy petition (ECF No.

13  101); (4) and April 16, 2014 order lifting the stay (ECF No. 103).  ECF No. 109.  Smith argues

14  that order and recommendations entered by the court should be set aside because they were

15  entered in violation of an automatic bankruptcy stay.  As discussed below, Smith is mistaken.

16         Rule 60(b) provides that a court may relieve a party of an order for mistake, inadvertence,

17  surprise, or excusable neglect.  Fed. R. Civ. P. 60(b)(1).  Local Rule 230(j) provides that a motion

18  for reconsideration must set forth the facts and circumstances surrounding the motion, including

19  "what new or different facts or circumstances are claimed to exist which did not exist or were not

20  shown upon such prior motion, or what other grounds exist for the motion."  Smith fails to satisfy

21  these standards.

22         Smith argues that the orders and findings and recommendations must be revisited because

23  they were issued in violation of the automatic stay that was in place as a result of Winding 's

24  Chapter 13 bankruptcy filing.  ECF No. 109 at 2-7.  Smith dismisses as inconsequential the

25  bankruptcy court's determination that the automatic stay never applied because, according to

26

27         [4]  Subsequent to Smith filing her motion for reconsideration, the assigned district judge
    adopted the March 7, 2014 findings and recommendations.  ECF No. 111.  Plaintiff does not seek
28  reconsideration of the order adopting the March 7 findings and recommendations.

1  Smith, that order was obtained by fraud.  According to Smith, Sexton falsely represented that he

2  had personal knowledge of the 2005 purchase of the vessel.  Sexton's firm's representation of

3  plaintiff began in 2010.  Therefore, according to Smith, Sexton could not have been a percipient

4  witness to the transaction in dispute.  *Id*. at 4-7.  Thus, Smith now argues that the ruling of the

5  bankruptcy court must be ignored.  ECF No. 109 at 3-4.  The reasoning is tortuous to say the

6  least.

7       Smith's argument lacks merit for a number of reasons.  First, as discussed below, Sexton

8  made no such misrepresentation.  Secondly, this action is not the forum in which Winding could

9  seek review of the bankruptcy court's order.  Further, Smith has no standing to assert Winding's

10  rights that might have arisen from Winding's bankruptcy petition.  As for Smith's own interest in

11  this case, the March 31, 2014 order staying this case made clear that even if the automatic stay

12  had applied to Winding due to Winding's bankruptcy petition, it would not have applied to

13  Smith.[5]  ECF No. 101 at 2.  Pursuant to 11 U.S.C. § 362, the filing of the bankruptcy petition

14  operates as an automatic stay only as to claims against the debtor or, in this case, defendant

15  Winding.  As the Ninth Circuit has explained:

16          All proceedings in a single case are not lumped together for
           purposes of automatic stay analysis.  Even if the first claim filed in
17          a case was originally brought against the debtor, section 362 does
           not necessarily stay all other claims in the case.  Within a single
18          case, some actions may be stayed, others not.  Multiple claim and
           multiple party litigation must be disaggregated so that particular
19          claims, counterclaims, cross claims and third-party claims are
           treated independently when determining which of their respective
20          proceedings are subject to the bankruptcy stay.

21  *Parker v. Bain*, 68 F.3d 1131, 1137 (9th Cir. 1995).

22  /////

23  /////

24  /////

25  _____

26      [5] Although this court, in the interest of judicial economy, later stayed this action pending
    Winding's bankruptcy proceeding, that stay was entered after the orders and findings and
27  recommendations in question.  Smith's reconsideration argument is predicated solely on the claim
    that those orders and findings and recommendations were in violation of the automatic
28  bankruptcy stay.

6

1    Thus, section 362 would not have automatically stayed this action as to the other, non-

2    bankrupt defendant, Smith.  *See Ingersoll-Rand Financial Corp. v. Miller Mining Co. Inc.*, 817

3    F.2d 1424, 1427 (9th Cir. 1987) ("In the absence of special circumstances, stays pursuant to

4    section 362(a) are limited to debtors and do not include non-bankrupt co-defendants.").

5        As to Smith's allegations of fraud in obtaining the order, contrary to her contention there

6    is no indication that the bankruptcy court relied on the declaration of Mr. Sexton in finding that

7    no automatic stay went into effect.  The order finding that there was no automatic stay

8    specifically found that Winding had "filed three previous Chapter 13 cases, all of which were

9    dismissed for reasons unrelated to 11 U.S.C. § 707(b) within one year preceding the filing of the

10   instant Chapter 13 case on January 21, 2014."  ECF No. 102 at Ex. 1.  The order further stated

11   that "no automatic stay came into effect in this case at any time by operation of law.  11 U.S.C.

12   § 362(c)(4)(A)."  *Id*.  11 U.S.C. § 362(c)(4)(A) provides that:

13
14           (i) if a single or joint case is filed by or against a debtor who is an
             individual under this title, and if 2 or more single or joint cases of
             the debtor were pending within the previous year but were
15           dismissed, other than a case refiled under a chapter other than
             chapter 7 after dismissal under section 707(b), the stay under
16           subsection (a) shall not go into effect upon the filing of the later
             case; and

17           (ii) on request of a party in interest, the court shall promptly enter
             an order confirming that no stay is in effect.
18

19       Accordingly, the bankruptcy court found that no automatic stay went into effect because

20   Winding had filed two or more bankruptcy petition in the previous year.  There is nothing in that

21   finding that relies on or is dependent upon representations by Sexton.

22       Further, the misrepresentations identified by Smith are not material to the question of

23   whether the automatic stay applied.  Rather, they all deal with whether Mr. Sexton was a

24   percipient witness to the underlying facts surrounding the 2005 purchase of the vessel.  These

25   allegations have nothing to do with Winding's previous bankruptcy petitions.  Accordingly, the

26   alleged "new evidence"—Mr. Sexton's misrepresentations—do not warrant reconsideration of

27   this court's prior orders.

28   /////

7

1    Lastly, and significantly, there is no basis whatsoever for Smith's position that Mr. Sexton

2  committed fraud on the bankruptcy court.  Mr. Sexton does not make any statement in his

3  declaration claiming to be a percipient witness to the disputed transaction.  Rather, he states that

4  he has personal knowledge of certain limited facts, which are based on exhibits that he had

5  attached to his declaration filed with the bankruptcy court.[6]  For example, Sexton declares that on

6  July 12, 2005, Smith purchased the vessel from a dealer in Sacramento.  He further states that

7  Smith financed the purchase price of $336,053, and executed a Preferred Mortgage of vessel.

8  ECF No. 119 at Ex. 2.  Sexton does not claim that he was a witness to this transaction.  He simply

9  recites what is depicted by the exhibits.  *See id*.  The suggestion that he asserted otherwise is

10  disingenuous.

11    Smith has failed to show that the bankruptcy court relied on misrepresentations in

12  Sexton's declaration or that there was any fraud.  Further, Smith has shown no basis for

13  reconsideration of the court's orders.

14  III.    Smith's Motion to Strike

15    Smith's motion to strike the affidavits and declarations submitted by plaintiff in support of

16  its motions for summary judgment and for termination sanctions, and in opposition to Smith's

17  motion for reconsideration is premised on the same meritless assertion that the bankruptcy court's

18  ruling was obtained by fraud.  ECF No. 133 at 3-5.  As just explained, the argument fails.

19    Smith also asserts numerous evidentiary objections to the affidavit of Brian Lutton, which

20  plaintiff submitted in support of summary judgment.  *Id*. at 6-9.  Smith claims that a number of

21  the statements in Mr. Lutton's declaration are argumentative, vague, misleading, confusing, and

22  constitute inadmissible hearsay evidence.  *Id*.  These conclusory objections are not otherwise

23  explained.  Furthermore, Lutton's declaration contains adequate foundation, is based on personal

24  knowledge and addresses relevant facts.  *See* ECF No. 114.  Accordingly, Smith's objections are

25  overruled.

26

27    [6]  While the declaration he filed with the bankruptcy court apparently contained the
exhibits, the copy submitted as Exhibit 2 to PNC's opposition to the motion for reconsideration
28  does not include the exhibits cited therein.  *See* ECF No. 119 at Ex. 2.

8

1    Smith also takes issue with a number of the exhibits submitted by Lutton, arguing that

2    Lutton was not a percipient witness to the creation of such documents because they were created

3    in 2005, before PNC Bank acquired National City Mortgage.  The documents, which all relate to

4    the purchase of the vessel, are admissible under the business records exception.  *See* Fed. R. Evid.

5    803(6).  That objection is also overruled.

6    Accordingly, Smith's motion to strike is denied.

7    IV.    Winding's Motion for 120 Day Stay

8    Defendant Winding requested that all matters pending before the court be continued for

9    120 days.  ECF No. 153.  He claims that he is suffering from health issues and attempting to

10   retain counsel to represent him in this matter.  *Id*. at 4.  Winding filed his request for a

11   continuance on October 15, 2014, and to date there is no indication that he has acquired

12   representation.  Furthermore, as explained below, the recommended disposition of the various

13   motions pending before the court resolves all pending claims.  Thus, continuing the matter further

14   would serve no purpose.  Accordingly, Windings request is denied.

15   V.    Motion for Termination of Sanctions or Alternative Evidentiary Sanctions

16   Plaintiff seeks terminating sanctions against Smith and Winding based on their continuous

17   failure to appear for their noticed depositions.  ECF No. 112.  Plaintiff requests that the court

18   strike defendants' answers and counterclaims and enter judgment in plaintiff's favor, given that

19   defendants Winding and Smith have refused to appear for their noticed depositions.  ECF No.

20   112.  Alternatively, plaintiff requests the imposition of evidentiary sanctions precluding

21   defendants from introducing any evidence in opposition to plaintiff's complaint or in support of

22   their counterclaims, whether at trial or in opposition to plaintiff's pending motion for summary

23   judgment.  *Id*. at 2.  As explained below, defendants have intentionally failed to attend their

24   noticed deposition in violation of this court's orders, and their conduct warrants the imposition of

25   evidentiary sanctions.

26   A.    Background

27   Plaintiff first served notices of deposition on defendants on January 15, 2014.  ECF No.

28   92 at Exs. 2, 3.  Smith's deposition was noticed for February 6, 2014, and Winding's for February

9

7, 2012. *Id*. Neither defendant appeared for their depositions. *Id*. at 10 (Declaration of William Sexton ISO Mot. For Sanctions ¶ 6). Accordingly, on February 12, 2014, plaintiff filed a motion for evidentiary sanctions or, in the alternative, to compel defendants' attendance at their depositions. ECF No. 92. That motion was granted in part, and defendants were ordered to appear at their depositions on a date selected by plaintiff before April 4, 2014. ECF No. 95. The order explicitly admonished defendants "that should they again fail to appear for their depositions, which are to be re-noticed by plaintiff, the court will not hesitate to impose further sanctions, including the exclusion of evidence at trial." *Id*. at 2. They were also "admonished that repeated violations of the Federal Rules of Civil Procedure or this court's local rules, or court orders may result in terminating sanctions that would result in the dismissal of defendants' counterclaims and the entry of judgment against defendants on plaintiff's complaint." *Id*. at 3.

Regrettably, the admonitions had little effect. Plaintiff again served notices of deposition on Smith and Winding, setting their depositions for April 3, 2014, and April 4, 2014, respectively. ECF No. 112 at Exs. 2, 3. Rather than proceed with those depositions, Winding submitted a notice of filing what apparently was his fourth Chapter 13 bankruptcy petition within one year. The result was further unnecessary delay pending the Bankruptcy Court's ruling that the automatic stay did not apply. *See* ECF No. 101. On April 18, 2014, the stay entered by this court was lifted and both defendants were ordered to appear for their deposition. ECF No. 103. Smith and Winding were again served with notices of deposition (set for May 15, 2014, and May 16, 2014 respectively, ECF No. 112 at Exs. 7, 8) but notwithstanding the court's order they again failed to appear. ECF No. 112 at Exs. 9, 10. This motion for sanctions followed.

B.    Discussion

Federal Rule of Civil Procedure 37(b)(2) authorizes sanctions against a party who disobeys a discovery order. The available sanctions include an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" "striking a pleading in whole or in part;" "dismissing the action or proceeding in whole or in part;" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v), and (vi).

"A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe" and only justified upon a showing of "willfulness, bad faith, and fault." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  In considering whether a case-dispositive sanction is justified, a court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).

Here, the public's interest in resolving this litigation weighs in favor of terminating sanctions.  *See Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) ("The public's interest in expeditious resolution of litigation always favors dismissal.").  The court's need to manage its docket also weighs in favor of terminating sanctions.  *See Jones v. Lehigh Southwest Cement Co.*, No. 1:12-cv-0633-AWI-JLT, 2014 WL 346619, at *7 (E.D. Cal. Jan. 30, 2014) ("[B]ecause the Eastern District of California is one of the busiest federal jurisdictions in the United States and its District Judges carry the heaviest caseloads in the nation, the Court's interest in managing its docket weighs in favour of terminating the action.").

Plaintiff has also suffered prejudice due to defendants' failure to attend their depositions.  As discussed in further detail below regarding summary judgment, the instant dispute revolves around Smith's allege failure to pay off a loan she incurred to purchase the vessel and Smith's insistence, without documentation, that she repaid it in full.  According to plaintiff, Smith defaulted on a promissory note in the sum of approximately $336,000.  However, Smith claims that at the time she purchased the vessel, she returned a different boat that she had just purchased and exchanged it for the vessel now in question but that plaintiff failed to credit her value of the returned boat.  The defendants also allege that Winding obtained a senior lien on the vessel.  Sworn declarations in support of these allegations defeated plaintiff's previous motion for summary judgment.  *See* ECF No. 56 at 3-7.  By refusing to attend their depositions, defendants have prevented plaintiff from examining Smith and Winding in detail and under oath as to exactly how Smith paid for the first vessel that she allegedly owned unencumbered and exchanged for the

11

1    second and with what funds Winding was able to loan Smith the money on which he premises his

2    security interest.  They have also deprived plaintiff the opportunity test the veracity of their

3    statements and, in short, have impaired plaintiff's ability to prosecute this action.  *See In re*

4    *Phenylpropanolamine*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("A defendant suffers prejudice if the

5    plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the

6    rightful decision of the case.").  Furthermore, defendants' failure to attend their depositions has

7    created an undue delay in this case, which also weighs in favor of termination sanctions.  *Id*.

8    ("The law also presumes prejudice from unreasonable delay.").

9            Public policy favors disposition of cases on their merits.  *Id*. at 1228.  "At the same time, a

10   case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and

11   discovery obligations cannot move forward toward resolution on the merits."  *Id*.  Here,

12   defendants made a conscious decision to not attend their depositions notwithstanding the court's

13   stern admonishments that terminating sanctions may issue should they fail to attend their

14   depositions.  They were first served with notices of deposition on January 15, 2014.  ECF No. 92

15   at Exs. 2, 3.  Rather than attend their deposition, Winding notified the court that he had filed a

16   bankruptcy petition.  Although he filed that petition on January 21, 2014, he did not notify this

17   court of his pending bankruptcy action until March 20, 2014, after plaintiff moved for an order

18   compelling defendants' attendance at their depositions.  In any event, the bankruptcy court

19   determined that it was his fourth petition within one year and that the automatic stay did not

20   apply.   Even after that ruling, defendants failed to comply with the court's April 18, 2014 order

21   directing them to appear for their deposition.  ECF No. 103 at 2.

22           At some point, enough is enough.  That point has been reached here.  Defendants' failure

23   to attend their depositions was willful and deliberate, and has resulted in an unreasonable delay of

24   this proceeding.  Accordingly, this factor does not weigh in defendants' favor.[7]

25           [7]  The record demonstrates that defendants received the notices of the depositions.  At the
     hearing, the court confirmed the defendants' address of record, which is the same address utilized
26   by plaintiff for service of the notices of deposition.  ECF No. 112 at Ex. 2, 3, 7, 8.  While
     defendants have made dubious claims of not receiving documents throughout this litigation, *see*
27   *e.g.* ECF Nos. 44, 47, 51 at 4-5, 52 at 4, they conveniently have experienced no trouble receiving
     any orders issued and served by this court at their address of record.  In any event, defendants do

28

1    The court must also consider the availability of less drastic sanctions. *Malone v. U.S.*

2    *Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) ("The district court abuses its discretion if it

3    imposes a sanction of dismissal without first considering the impact of the sanction and the

4    adequacy of less drastic sanctions."). The court has twice ordered defendants to appear for their

5    depositions. ECF Nos. 95, 103. The second (March 7, 2014) order, in addition to directing

6    defendants to appear for their depositions, imposed monetary sanctions in the form of an order to

7    defendants to reimburse plaintiff the reasonable expenses it incurred in attending the initial

8    depositions. ECF No. 95 at 4-5. As noted above, the orders have had no effect. In spite of the

9    bankruptcy court order as well as this court's subsequent order explaining that no automatic stay

10   ever went into effect, ECF No. 103, defendants declined to attend their depositions in direct

11   violation of this court's order. Accordingly, the use of less severe sanctions has had no impact on

12   defendants' conduct.

13          Defendants have demonstrated a continuous disregard to the discovery process and this

14   court's orders. This disregard has denied plaintiff an opportunity to evaluate the assertions made

15   by defendants in response to its claims. It has also needlessly consumed the resources of this

16   court. Furthermore, the use of these delay tactics has also prejudiced plaintiff by forcing it to pay

17   in excess of $50,000 to store the vessel while it awaits disposition of this matter. ECF No. 114 at

18   32-34. On balancing the factors outlined above, the court finds that, at minimum, evidentiary

19   sanctions are appropriate. Accordingly, it is recommended that the court impose evidentiary

20   sanctions precluding defendants from offering evidence at trial or on summary judgment

21   opposing plaintiff's claims or in support of defendants' counterclaims. *See* Fed. R. Civ. P.

22   37(b)(2)(ii). Such evidentiary sanctions adequately address the prejudice plaintiff has endured,

23   but still requires plaintiff to produce evidence in support of its claims.

24   /////

25   _____

26   not specifically argue in their oppositions that they did not receive the notices of deposition. *See*
     ECF Nos. 132, 139. Instead, Winding continues to argue that plaintiff has obtained orders by

27   fraud and in violation of the automatic stay. ECF No. 132 at 5. Smith alludes to not receiving
     any documents from plaintiff, but her opposition demonstrates that she has received several

28   documents related to this case. ECF No. 139 at 10-11.

1   VI.    Plaintiff's Motion to Dismiss Smith's Counterclaim

2          The day before plaintiff moved for summary judgment, the court dismissed Smith's

3   counterclaim with 30 days to file an amended counterclaim.  ECF No. 111.  Thus, Smith's

4   counterclaim was already dismissed at the time plaintiff moved for summary judgment.   On June

5   30, 2014, Smith filed a first (but erroneously titled "second") amended counterclaim.  ECF No.

6   134.  The amended counterclaim asserts the same claims as the original counter claim.  *See id*.

7   Accordingly, the arguments made in plaintiff's current summary judgment motion apply equally

8   to Smith's amended counterclaim and therefore the court addresses plaintiff's motion for

9   summary judgment on Smith's claims for relief.  Although plaintiff moved to dismiss the

10  amended counterclaim for failure to state a claim, ECF No. 142, in light of the disposition

11  recommend below as to plaintiff's summary judgment motion, the motion to dismiss is rendered

12  moot.

13  VII.   Plaintiff's Motion for Summary Judgment

14         Plaintiff moves for summary judgment on its complaint against the defendants, and Smith

15  and Winding's counterclaims.  ECF No. 113.  As explained below, plaintiff is entitled to

16  summary judgment on its claims and defendants' counterclaims.[8]

17         A.     Standard

18         Summary judgment is appropriate when there is "no genuine dispute as to any material

19  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

20  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

21  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

22  to determine those facts in favor of the nonmovant.  *Crawford–El v. Britton*, 523 U.S. 574, 600

23  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v.*

24  _____

25         [8]  Although plaintiff's previous motion for summary judgment failed, ECF Nos. 56, 62, its
    new motion for summary judgment is appropriate given the development in the factual record and
26  the refusal of plaintiffs to be deposed.  *See Hoffman v. Tonnemacher*, 593 F.3d 908, 910-912 (9th
    Cir. 2010) ("[T]he denial of summary judgment does not preclude a contrary later grant of
27  summary judgment.  Consequently, allowing a party to file a second motion for summary
    judgment is logical, and it fosters the just, speedy, and inexpensive resolution of suits.") (internal
28  quotations omitted).

1    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994).  At bottom, a summary judgment

2    motion asks whether the evidence presents a sufficient disagreement to require submission to a

3    jury.

4            The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

5    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Thus, the rule functions to

6    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

7    trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

8    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

9    under summary judgment practice, the moving party bears the initial responsibility of presenting

10   the basis for its motion and identifying those portions of the record, together with affidavits, if

11   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

12   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

13   party meets its burden with a properly supported motion, the burden then shifts to the opposing

14   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

15   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

16           A clear focus on where the burden of proof lies as to the factual issue in question is crucial

17   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

18   summary judgment does not necessarily need to submit any evidence of its own.  When the

19   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

20   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National

21   Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

22   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U .S. at

23   323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

24   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

25   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

26   should be entered, after adequate time for discovery and upon motion, against a party who fails to

27   make a showing sufficient to establish the existence of an element essential to that party's case,

28   and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

1  circumstance, summary judgment must be granted, "so long as whatever is before the district

2  court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id*. at 323.

3        To defeat summary judgment the opposing party must establish a genuine dispute as to a

4  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

5  is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

6  248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

7  will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

8  determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party

9  is unable to produce evidence sufficient to establish a required element of its claim that party fails

10  in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

11  of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

12  at 322.

13        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

14  the court must again focus on which party bears the burden of proof on the factual issue in

15  question.  Where the party opposing summary judgment would bear the burden of proof at trial on

16  the factual issue in dispute, that party must produce evidence sufficient to support its factual

17  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

18  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

19  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

20  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

21  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

22  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

23  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

24        The court does not determine witness credibility.  It believes the opposing party's

25  evidence, and draws inferences most favorably for the opposing party.  *See id*. at 249, 255;

26  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

27  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

28  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

1    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

2    issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

3    Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

4    of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475

5    U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

6    reasonable inferences that might be drawn from it could not support a judgment in favor of the

7    opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

8    genuine dispute over an issue that is determinative of the outcome of the case.

9        B.    Facts[9]

10       Plaintiff contends that this is a simple collection case concerning the non-payment of a

11   written promissory note for the purchase of the vessel.  On July 12, 2005, Smith executed and

12   delivered to National City Bank ("National City") a Fixed Rate Promissory Note and Security

13   Agreement-Multi-State Dealer (the "Note") in the principal sum of $336,653.69, plus interest for

14   the purchase of the vessel.  Declaration of Brian Lutton (ECF No. 114) ¶ 6, Ex. 1.  Plaintiff's

15   interest in the vessel was secured by a Preferred Ship Mortgage (hereinafter the "Mortgage")

16   against the vessel which was duly recorded at the Vessel Documentation Center against the vessel

17   on August 18, 2005 as a Preferred Mortgage.  *Id*. at Exs. 3, 6.

18       On July 11, 2005, Smith allegedly executed a second Promissory Note Secured by a

19   Marine Vessel Called B&B Dreamin' (hereinafter "Note 2") in the amount of $110,000.00 with

20   defendant Winding.  *Id*. at Ex. 4.  However, Note 2 was actually contrived after-the-fact and was

21   not prepared until 2009.  Declaration of William Sexton (ECF No. 115) Ex. 10 at Nos. 38-42 and

22   Ex. 11 at No. 38-42.[10]

23   _____

24       [9]  As recommended above, defendants should be precluded from offering any declarations
     in opposition to summary judgment.  The facts contained herein are based on the evidence

25   submitted by plaintiff.

26       [10]  Exhibits 10 and 11 to the Sexton declaration are requests for admissions served on
     Smith and Winding.  They were served on defendants on February 28, 2014.  Sexton Decl. ¶ 2.

27   Defendants have not responded to these discovery requests.  *Id*.  Therefore, the requests for
     admissions are deemed admitted.  *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless,

28   within 30 days after being served, the party to whom the request is directed serves on the

In November 2009, plaintiff merged with National City and as a result plaintiff became the holder and owner of the Note and the Mortgage.  Lutton Decl. ¶ 11, Ex. 9.  Smith defaulted under the Note and the Mortgage by failing to make the monthly payment due on August 10, 2008 and all payments accruing thereafter.  *Id*. ¶ 12.  As a result, plaintiff elected to charge off this account in April 2009 and accelerate the entire balance due under the Note and the Mortgage.  *Id*.  There is now due and owing to plaintiff under the Note the principal sum of $288,648.57, and accrued interest from April 30, 2009, through July 9, 2014, in the amount of $133,003.53, and thereafter at the rate of 6.75% per annum.  *Id*. ¶ 13, Ex. 8.  On or about May 29, 2009, plaintiff repossessed the vessel for purpose of re-marketing same in order to apply the net proceeds to the balance owning under the Note and Mortgage.  *Id*. ¶ 14.  As a result of Smith's default and repossession of the vessel, plaintiff has incurred the sum of $54,849.41 as of May 31, 2014, for dockage, insurance, cleaning and related costs.  *Id*. ¶ 15, Ex. 8.

C.    Discussion

Plaintiff argues that it is entitled to summary judgment on its foreclosure claim based on the evidence submitted with its motion, defendants' failure to respond to its requests for admissions, and defendants' inability to provide contrary evidence as a sanction for failure to attend their depositions.  Plaintiff specifically seeks the court to order that (1) it has a first priority security interest in the vessel; (2) defendant Smith is in default of her obligations to plaintiff; (3) plaintiff is entitled to foreclosure of its security interest in the vessel against all defendants; and (4) plaintiff is entitled to a deficiency judgment against Smith pursuant to 46 U.S.C § 31325(b)(2) (A).  ECF No. 113 at 2.  As discussed below, the evidence submitted by plaintiff presents a prima facie case that plaintiff is entitled to a judgment of foreclosure.  Indeed, the only barrier to summary judgment on plaintiff's earlier motion were the declarations by Smith and Winding that Smith was not properly credited with a cash payment she allegedly had made when she bought the boat that she exchanged the next day for the one in question.  As discussed above, Smith and Winding have frustrated all attempts to take their depositions as to the seemingly implausible

requesting party a written answer or objection addressing to the matter and signed by the party or its attorney.").

18

story they tell and therefore they should be precluded from submitting testimony in opposition to this motion.

As to the merits of foreclosure, the evidence clearly demonstrates that plaintiff had a preferred mortgage.  A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.  46 U.S.C. § 31325(a).  On default of any term of a preferred ship mortgage, the mortgagee may enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented, a vessel titled in a state, or a foreign vessel.  *Id.* § 31325(b)(1) ("On default of any term of the preferred mortgage, the mortgagee may– (1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel"); *see also Capital Bank PLC v. M/Y Birgitta*, 2010 WL 2902740 (C.D. Cal. 2010) (A borrower's failure to pay any of the monthly installments on a marine loan after the bank's arrest of the borrower's foreign vessel for insufficient insurance constituted a default and thus made the entire unpaid principal due and owing under the marine loan and marine mortgage.); *Bogle v. M/Y Cajun Princess*, 2010 WL 1949550 (S.D. Fla. 2010) (A lien holder was entitled to summary judgment where there were no factual issues as to whether the preferred mortgage lien was valid; the current outstanding mortgage indebtedness secured by the vessel for principal and interest was $7,110,525.80, and the vessel owner conceded they were in default for nonpayment.).

The mortgagee may also enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness and a civil action against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness.  46 U.S.C. § 31325(b)(2).  Such an action may be brought following a foreclosure sale which produces insufficient proceeds to satisfy an outstanding preferred mortgage. *Wilmington Trust Co. v. M/V Miss B. Haven V*, 760 F. Supp. 2d 364 (S.D.N.Y. 2010).  The district courts have original jurisdiction of a civil action brought under § 31325(b)(1) or (2). *Id.* § 31325(c).

19

1       Plaintiff's evidence shows that it has a preferred ship mortgage on the vessel.  ECF No.

2   114 at ¶ 6, Exs. 1, 3, 6.  Defendant Winding admitted, by his failure to respond to plaintiff's

3   request for admissions, that his note entitling him to a security interest in the boat was prepared

4   after plaintiff's note and that plaintiff's security interest is senior to his.  ECF No. 115 at Ex. 10

5   Nos. 38-47.  Accordingly, plaintiff has a priority security interest to the vessel.

6       Plaintiff's evidence also establishes that Smith defaulted on her obligation under the note

7   by failing to make monthly payments due on August 10, 2008 and all payments accruing

8   thereafter.  ECF No. 114 ¶ 12.  While Smith contends that she paid off the original loan in full

9   and therefore is not in default, ECF No. 123 at 2, she does not, and cannot, submit evidence in

10  support of this contention.  Therefore, the evidence demonstrates that defendant Smith is in

11  default of her obligations to plaintiff under the mortgage.

12      As a result of defendant Smith's default, plaintiff elected to charge off the account in

13  April 2009 and accelerate the entire balance due under the Note and the Mortgage.  *Id.*

14  Accordingly, plaintiff is entitled to summary judgment against the vessel in the amount of

15  $288,348.57 (the principal still owed), plus accruing interest from April 30, 2009.  *Id.* ¶ 13, Ex. 8.

16      Furthermore, given the amount owed in principal, and the interest that has accrued since

17  the vessel was seized, it is unlikely that the sale of the boat will recover the amount owed to

18  plaintiff.  Accordingly, plaintiff may seek the outstanding indebtedness secured by the vessel

19  from Smith, the mortgagor of the vessel.  *See* 46 U.S.C. § 31325(b)(2).  However, at this juncture

20  the court is unable to determine the amount of any deficiency judgment as the vessel has not yet

21  been sold.  Thus, entry of judgment against Smith for the deficiency must await documentation

22  that establishes the actual amount of the deficiency.  Therefore, although plaintiff has established

23  that it is entitled to a deficiency judgment, entry of the judgment cannot occur until the vessel has

24  been sold and the amount of deficiency calculated.[11]

25  /////

26      [11] As judgment on plaintiff's claim against the vessel is needed before plaintiff can
27  proceed with its claim for a deficiency judgment, the court finds that there is no just cause for
    further delay and that entry of judgment on all other pending claims is appropriate at this time.
28  *See* Fed. R. Civ. P. 54(b).

1    As noted, plaintiff also seeks summary judgment as to all the claims asserted in Smith's

2    original counterclaim.  ECF No. 113 at 15.  Smith asserts four counterclaims against plaintiff: (1)

3    wrongful arrest of vessel; (2) wrongful foreclosure of a vessel; (3) violation of the Fair Debt

4    Collection Practices Act ("FDCPA"); and (4) interference with economic advantage.  ECF No.

5    134 at 6-11.  Smith's first two claims—wrongful arrest and foreclosure of a vessel—are premised

6    entirely on her contention that plaintiff knew that she had paid for the vessel in full and

7    nevertheless wrongfully arrested the boat.  *Id*. at 6-8.  As explained above, plaintiff's evidence

8    shows otherwise and defendant Smith is precluded from introducing contrary evidence.

9    Smith's FDCPA claim is based on her contention that plaintiff attempted to collect a debt

10   in the amount of $336,653.69, when the debt was approximately $36,000.  Again, the evidence

11   before the court demonstrates the original amount due under the note was $336,653.69, with

12   $288,648.57, plus interest, remaining unpaid.  Accordingly, defendant Smith cannot support her

13   FDCPA claim.

14   Smith's final claim—interference with an economic advantage—is based on plaintiff's

15   alleged wrongful interference with Winding's possession of the boat, which purportedly

16   destroyed a financial agreement between Smith and Winding regarding the $110,000 loan

17   Winding made to Smith.  As discussed above, plaintiff's evidence shows that its lien was senior

18   to that of Winding's, that Smith defaulted on her obligation to make payments for the vessel, and

19   that therefore plaintiff was entitled to repossess the vessel.  ECF No. 115, Ex. 10 at No. 47 and

20   Ex. 11 at No. 47.  As Smith is precluded from introducing any evidence in support of her claims,

21   plaintiff is entitled to summary judgment on those claims.

22   Plaintiff also moves for summary judgment on defendant Winding's counterclaims.  ECF

23   No. 113 at 16.  Winding asserts the following claims against plaintiff: (1) declaratory relief; (2)

24   conversion; and (3) tort (negligence).  ECF No. 32 at 8-10.  Winding's claims are premised

25   entirely on his allegation that he took a security interest in the vessel on July 11, 2005, a day

26   before Smith purchased the boat.  *Id*. at 7.  Putting aside the implausibility of Winding's

27   /////

28   /////

1   contention,[12] Winding cannot produce evidence in support of this contention, and plaintiff has

2   submitted evidence demonstrating that it retains an interest in the vessel senior to any interest

3   Winding may have.  As Winding cannot produce any evidence in support of his claims, plaintiff

4   is also entitled to summary judgment on the Winding counterclaim.

5   VIII.   Outstanding Fee Issues and Request for Attorneys' Fees

6           The March 7, 2014 order granting in part plaintiff's motion for evidentiary sanctions or, in

7   the alternative, motion to compel also awarded plaintiff the reasonable expenses incurred in

8   bringing its motion.  ECF No. 95 at 4.  While the order granted plaintiff's requests for attorneys'

9   fees in the sum of $1,650, the court noted that plaintiff failed to provide invoices for the

10  reasonable expenses it incurred because the invoices were not yet available.  *Id.*  Accordingly,

11  PNC was ordered to provide within 14 days an affidavit detailing the actual expenses incurred.

12  *Id.*

13          On March 10, 2014, PNC submitted the supplemental declaration of William Sexton.

14  ECF No. 96.  His declaration and the attached exhibits show that Mr. Sexton spent 4 hours (2

15  hours each) at the depositions at which defendants failed to appear, 6 hours traveling from Los

16  Angeles to Sacramento and back, and that it is generally the practice for Los Angeles attorneys to

17  bill clients for travel time.  *Id.* ¶ 4, 5; *see Davis v. City and County of San Francisco*, 976 F.2d

18  1536,1543 (9th Cir. 1992) (to recover attorney's fees for travel time, counsel must submit

19  evidence establishing that it is customary for local attorneys to bill clients for travel time).  The

20  declaration also shows that plaintiff incurred $1,816.73 in costs for noticing and attending

21  defendants' depositions and bringing its motion to compel their depositions.  *Id.* ¶ 7 and

22  attachments.  Mr. Sexton also states that he spent one hour preparing the declaration in support of

23  the requested for fees and costs.  *Id.* ¶ 8; *see Davis*, 976 F.2d at 1544 ("This Court has repeatedly

24  held that time spent by counsel in establishing the right to a fee award is compensable.").

25          Accordingly, in addition to monetary sanction already awarded in the amount of $1,650,

26  plaintiff is entitled to $2,750 in attorneys' fees for Mr. Sexton's time he spent traveling to and

27

28          [12]  Exactly how Smith could grant to Winding a security interest in property she does not own is difficult to comprehend.

22

1    attending the depositions, $1,816.73 for costs incurred in noticing and holding defendants'

2    depositions, and $275 for preparing the supplemental declaration in favor of attorneys' fees.

3    Accordingly, PNC is entitled to $6,491.73 based on plaintiff's February 12, 2014 motion for

4    sanctions.

5           Additionally, plaintiff seeks to recover the reasonable expenses incurred in bringing its

6    June 6, 2014 motion for terminating sanctions.  ECF No. 112 at 9-10.  Federal Rule of Civil

7    Procedure 37(b)(2)(C) provides that, "Instead of or in addition to the orders above, the court must

8    order the disobedient party, the attorney advising that party, or both to pay the reasonable

9    expenses, including attorney's fees, caused by the failure [to comply with a discovery order],

10   unless the failure was substantially justified or other circumstances make an award of expenses

11   unjust."

12          As explained above, defendants' repeated failure to attend their depositions was

13   intentional and in direct violation of this court's orders.  Given their conduct, the court finds it

14   appropriate to require them to reimburse plaintiff the reasonable expenses incurred in bringing its

15   motion for sanctions.  In his declaration, Mr. Sexton declares that his hourly rate is $275, he spent

16   5 hours preparing his motion and expended 3.5 hours appearing at the depositions, and incurred

17   $584.50 in court-reporter fees.  ECF No. 112 at 12.  The court finds that hourly fee charged, as

18   well as the time spent preparing the motion and attending the depositions, were reasonable.  Mr.

19   Sexton further states that he expected to spend time reviewing documents and attending the

20   hearing.  *Id*.  However, the motion for sanctions was held at the same time as plaintiff's motion

21   for summary judgment, *see* ECF No. 143, and therefore, regardless of defendants' nonattendance

22   at their depositions, counsel would have been required to prepare for the hearing and travel to the

23   courthouse.  Thus, plaintiff is not entitled to reimbursement for the extra two hours.  Accordingly,

24   defendants shall also reimburse plaintiff $2,922 for the reasonable expenses incurred in bringing

25   its June 6, 2014 motion for sanctions.  ECF No. 112.

26          Plaintiff also requests attorneys' fees, court costs, and custodial fees.  ECF No. 113 at 17.

27   Local Rules 292 and 293 provide that motions for awards of attorney's fees and costs shall be

28   filed not later than 28 days after the entry of final judgment.  *See* E.D. Cal. L.R. 292, 293.  Rule

23

293 further requires a party seeking an award of attorney's fees to submit an affidavit addressing

certain criteria that the court will consider in determining whether an award of attorney's fees is

appropriate.  *See* E.D. Cal. L.R. 293(b) and (c).  The local rules also provide that "[w]ithin

fourteen (14) days after entry of judgment or order under which costs may be claimed, the

prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C.

§ 1924." E.D. Cal. L.R. 292.  Pursuant to 28 U.S.C. § 1924, a party claiming any item of cost

must submit a bill of costs and attach thereto an affidavit demonstrating that the "item is correct

and has been necessarily incurred in the case . . . ."

Plaintiff has not submitted an affidavit addressing the criteria listed in Local Rule 293.

Plaintiff has also failed to submit a bill of cost conforming to 28 U.S.C. § 1924.  *See* E.D. Cal.

L.R. 292.  Accordingly, plaintiff's request for attorney's fees and costs shall be addressed in an

appropriate motion filed in conformance with Local Rules 292 and 293.

VII.    Conclusion

For the reasons stated above, it is hereby ORDERED that:

1. Defendant Winding's motion for a 120 extension of time, ECF No. 153, is denied.

2. Defendant Smith's motion for reconsideration, ECF No. 109, is denied.

3. Defendant Smith's motion to strike, ECF No. 133, is denied.

Furthermore, it is hereby RECOMMENDED that:

1. Plaintiff's motion for evidentiary sanctions be granted in part, and defendants be

precluded from offering evidence in opposition to plaintiff's claims or in support of their

respective counterclaims.

2. Plaintiff's motion for summary judgment, ECF No. 113, be granted in part as follows:

and the court hold as follows:

a. Plaintiff be granted summary judgment on its in rem claims against the vessel

and is entitled to foreclose on its security interest in the vessel;  Plaintiff be directed to file with

the court any necessary documents needed for approval of the sale of the vessel within 30 days of

any order adopting these findings and recommendations;

/////

24

b.  Plaintiff motion for summary judgment on Smith's first amended counterclaim be granted;

c.  Plaintiff's motion for summary judgment on Winding's counterclaim be granted;

d.  Upon the foreclosure and sale of the vessel, plaintiff  file the necessary documents to enable the court to determine any outstanding indebtedness owed by Smith.  Upon review of such documentation, the court will determine the deficiency, if any, and enter an appropriate order setting the amount of the judgment against Smith as to plaintiff's in personam claim for that deficiency.

e.  Plaintiff's request for attorneys' fees, *see* ECF No. 113, be denied without prejudice to a motion brought under Local Rule 292 and 293.

3.  Plaintiff's motion to dismiss defendant Smith's first amended counterclaim, ECF No. 142, be denied as moot.

4.  The Clerk be directed to enter judgment under Fed. R. Civ. P. 54(b) on all claims save and except the issue of the amount of the deficiency judgment to be entered against Smith.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 16, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

25